Filed 9/1/15  P. v. Asberry CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALOYSIUS EMMANUEL ASBERRY,<br><br>    Defendant and Appellant. | F067710<br><br>(Super. Ct. No. BF144270B)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Aloysius Emmanuel Asberry (Asberry) was convicted of second degree murder and deliberate and premeditated attempted murder.  The evidence showed that he acted not as the direct perpetrator but as an aider and abettor.  He argues that the jury

instructions were erroneous because they failed to express the idea that, to be guilty of these offenses as an aider and abettor, he had to have an intent to kill. Asberry maintains that, if the jury found the direct perpetrator acted with implied malice, it would be incorrect for it to find Asberry guilty as an accomplice without making a separate finding that Asberry intended to kill.

Alternatively, Asberry argues that the jury should not have been instructed that the direct perpetrator (who was not tried in the same trial) could have committed murder on an implied-malice basis in the first place. Asberry says he could not be guilty of murder as an aider and abettor if implied malice was the direct perpetrator's mental state, so the jury should not have been allowed to consider that theory of murder. This argument is based on the notions that an accomplice must share the intent of a direct perpetrator and that implied malice is not an intent and thus cannot be a shared intent.

For murder, both of Asberry's arguments are contrary to the settled law. To be guilty of murder as an aider and abettor, the jury had to find that the direct perpetrator committed murder, that Asberry knew of the direct perpetrator's intention to commit the criminal act, and that Asberry intended to assist. If the direct perpetrator acted with implied malice—that is, intentionally committed an act of which death was a natural and probable consequence, while knowing of this danger and having a conscious disregard for life—and Asberry knew of the direct perpetrator's intention of committing such an act, intended to assist, and did assist, then Asberry is guilty of second degree murder. Neither the direct perpetrator nor the accomplice need have an intent to kill under this theory of murder.

For attempted murder, it is true that a direct perpetrator and an accomplice both must have an intent to kill, but the jury instructions in this case were sufficiently clear on that point.

We will order the correction of a clerical error in the abstract of judgment and otherwise affirm.

2.

## *FACTS AND PROCEDURAL HISTORY*

Bakersfield police responded to a report of shots fired around 1:41 a.m. on September 26, 2012. In an alley near the intersection of 34th Street and Panama Street, they found Christopher Gonzales (Christopher) face down on the ground, dead with a gunshot wound to the chest. Nearby on his knees, also bleeding from a gunshot wound, was Christopher's brother, Andrew Gonzales (Andrew). Andrew told officers there had been an argument and the shooter was a black teenage boy who was accompanied by two young black men.

The district attorney filed an information charging Asberry and Peter Collins (Collins) in the shootings. As will be seen, these defendants were accused as accomplices, not direct perpetrators. The People's evidence indicated that a third perpetrator, Gary A. (Gary), was the shooter. The information charged Asberry and Collins with Christopher's murder (Pen. Code,[1] § 187) in count 1 and with the attempted murder (§§ 187, 664) of Andrew in count 2. The information alleged that Asberry and Collins committed both offenses for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b).) Both offenses were alleged to be deliberate and premeditated (§ 189), and it was alleged, as to both offenses, that a principal intentionally and personally discharged a firearm, causing great bodily injury or death (§ 12022.53, subds. (d), (e)(1)). For the murder count, the information charged a gang special circumstance for both defendants. (§ 190.2, subd. (a)(22).) The information further alleged that Asberry had a prior conviction for burglary. This conviction was the basis of a second-strike enhancement allegation (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)), a prior-prison-term enhancement allegation (§ 667.5, subd. (b)), and a prior-serious-felony enhancement allegation (§ 667, subd. (a)) for both counts. Asberry's prior conviction for being in possession of a stolen vehicle was the basis of another prior-

---

[1]Subsequent statutory references are to the Penal Code unless otherwise noted.

3.

prison-term enhancement allegation (§ 667.5, subd. (b)) for both counts. Finally, in count 3, the information charged Asberry and Collins with active participation in a criminal street gang. (§ 186.22, subd. (a).) The prior offenses described above were alleged for sentence-enhancement purposes in connection with count 3 as well.

At trial, Andrew testified that he lived near a Fastrip convenience store at 34th and Q Streets and went to the store with Christopher around 1:30 a.m. on September 26, 2012. Approaching the store, he saw Asberry, Collins, and Gary standing in the alley. Inside the store, he met his friend Emmanuel Body, to whom he had previously sold drugs. Body was high on methamphetamine and appeared to be scared of something. Andrew and Christopher bought beers and a cigar. Andrew shared the cigar with Body outside the store, and then Andrew and Christopher headed for Christopher's house while Body walked away in another direction.

In the alley, Andrew again saw Asberry, Collins, and Gary. As Andrew and Christopher passed by the other three men, about two or three feet away, Collins said Body was no good and Andrew and Christopher should not talk to him. Andrew answered, "I know him. He's a cool cat. He's good with me." Andrew and Christopher continued down the alley. Andrew heard footsteps following them and looked back. He saw Collins take something from the area of his hip and hand it to Asberry. Asberry handed it to Gary, who put it in his waistband. At first, Andrew thought the object could have been a cell phone. The three were about 15 feet away.

Andrew, not yet sure what the object was, became concerned and told Christopher that the two of them should move to opposite sides of the alley and let the other three pass. As he walked by, Gary mumbled something to Christopher that Andrew could not make out. Christopher replied, "We're just trying to—oh, I'm just trying to go home, but it's whatever, dog." Gary responded, "I ain't no nigga." Christopher answered, "I didn't call you a nigga. I called you dog."

4.

After Asberry, Collins, and Gary passed by, Andrew and Christopher were expecting a fight. Gary drew a gun from his waistband and "tried to cock it back" but "it locked it up on him, and he was struggling." This was when Andrew realized the object Gary put in his waistband after receiving it from Asberry was a gun. As Gary struggled to operate the gun, Asberry said to him, "Fuck it, give it to me." Asberry grabbed the gun and tried to take it from Gary. Gary pulled it away and succeeded in moving the slide back.

Gary began firing. He fired 9 to 12 times. First he shot and killed Christopher. Then he shot Andrew. Andrew was hit four times. Gary and Asberry ran away in one direction and Collins in another. Andrew believed he and his brother were shot because they had been talking to Body.

Body testified that he had known Andrew since middle school and they sometimes sold drugs to each other. Body was acquainted with Collins and had once had a physical fight with him. The fight was over Gary's mother. Collins was dating her. Body also was acquainted with her but was not dating her. According to Body, Collins appeared to be under a misapprehension about the nature of Body's relationship with her. Body admitted he had been a member of the Bloods criminal street gang for seven years but denied having told police that Collins and Asberry were members of the Eastside Crips gang. Body said he was not aware of any rivalry between the Bloods and the Eastside Crips.

Body testified that he lived near the Fastrip at 34th and Q Streets and was there around 1:30 a.m. on the night of the shooting. He saw Collins, Asberry and Gary outside, before entering the store, and briefly spoke with Asberry. Asberry asked whether Body knew Gary and whether he had any problems with Gary. Body knew Gary only by sight. He told Asberry he had no problems. Then Body went inside.

Inside the store, Body saw Andrew and Christopher. Andrew gave Body $20 worth of methamphetamine to sell. They exited, had a smoke, and walked away.

Collins, Asberry, and Gary were in the alley. One of them called out to Body, but Body kept walking. Body asked Andrew and Christopher if he could give them a ride home in his car. He "felt bad vibes" and did not feel good about letting them walk home. He told them it would be in their best interest if they rode with him. Andrew and Christopher did not want a ride and headed home on foot. Body continued on toward his car and was about a block away from the store when he heard gunshots.

Sean Morphis, a police officer, testified that he interviewed Body on October 4, 2012. Body told Morphis that Gary was present when Body and Collins had their fight over Gary's mother. Body said he had been dating Gary's mother. Body also said that when he was walking into the Fastrip store on the night of the shootings, Asberry told Body that if Body wanted to fight somebody, he should fight Asberry. Body said he believed Asberry and Gary wanted to start trouble with him. He told Morphis he begged Andrew and Christopher to accept a ride from him and not to go down the alley.

The prosecution presented testimony on gang issues by several police officers. One officer opined that, at the time of the shooting, Asberry and Collins were members of the Eastside Crips, Body was a Blood, and Christopher was a member of the Eastside Bakers. Andrew had been an Eastside Baker at one time, but had dropped out by the time of the shootings. The same officer opined that a hypothetical crime based on the facts of the case would be done in association with and for the benefit of the Eastside Crips. The jury's findings on the gang allegations are not at issue in this appeal, so we will not discuss the gang evidence in more detail.

In his closing argument, the prosecutor said Collins gave the gun to Asberry, who gave it to Gary; then Gary shot the victims. The prosecutor urged the jury to find Asberry and Collins guilty of murder and attempted murder as aiders and abettors of Gary, and to find the crimes gang-related because Asberry and Collins were Crips, and Gary, a minor, was acting to prove himself worthy of membership in the Crips by shooting associates of Body, a member of the rival Bloods.

6.

On count 1, the jury found Asberry not guilty of first degree murder; found not true the allegation that the crime was willful, deliberate and premeditated; and rejected the gang-murder special circumstance. It found Asberry guilty, however, of second degree murder. On count 2, the jury found Asberry guilty of attempted murder and found the attempted murder to be willful, deliberate, and premeditated. The jury could not reach a verdict on the gang and firearm-enhancement allegations on counts 1 and 2 or on the gang offense charged in count 3. The court declared a mistrial on those charges. The court found true the prior-conviction allegations on counts 1 and 2.

On count 1, the court imposed a sentence of 30 years to life (15 years to life for second degree murder (§ 190), with the minimum term doubled because of the prior strike (§ 667, subd. (e)), plus five years pursuant to section 667, subdivision (a), and one year pursuant to section 667.5, subdivision (b). The second section 667.5, subdivision (b), allegation was stricken. On count 2, the court imposed a sentence of nine years (the upper term under section 664, subdivision (a)), plus five years pursuant to section 667, subdivision (a), and one year pursuant to section 667.5, subdivision (b). The second section 667.5, subdivision (b), allegation was again stricken. The total was 30 years to life plus 21 years.

## *DISCUSSION*

Asberry maintains that the jury instructions on aiding and abetting and murder were erroneous. In a criminal trial, the court must give an instruction requested by a party if the instruction correctly states the law and relates to a material question upon which there is evidence substantial enough to merit consideration by the jury. (*People v. Avena* (1996) 13 Cal.4th 394, 424; *People v. Wickersham* (1982) 32 Cal.3d 307, 324, overruled on other grounds by *People v. Barton* (1995) 12 Cal.4th 186, 201.) Even without a request, a trial court in a criminal case is required to give correct jury instructions on the general principles of law relevant to issues raised by the evidence. (*People v. Michaels* (2002) 28 Cal.4th 486, 529-530.)

7.

The trial court has no duty to give an instruction if it is repetitious of another instruction the court gives. (*People v. Turner* (1994) 8 Cal.4th 137, 203, overruled on other grounds by *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5.) "'"[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction."'" (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248.)

An appellate court can address instructional error to which no objection was made at trial if the error impaired the defendant's substantial rights. (§ 1259.) But instructional error warrants reversal only if prejudicial. (*People v. Breverman* (1998) 19 Cal.4th 142, 178.)

Here the jury was instructed in accordance with CALCRIM No. 400 that a person can be guilty of a crime either as a perpetrator who committed the crime directly or as an aider and abettor. The jury was instructed in accordance with CALCRIM No. 401 on the elements of aiding and abetting. The prosecution must prove that "the perpetrator committed the crime"; "the defendant knew that the perpetrator intended to commit the crime"; "before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime"; and "the defendant's words or conduct did, in fact, aid and abet the perpetrator's commission of the crime."

On murder, the jury was instructed in accordance with CALCRIM Nos. 500, 520, and 521. These instructions included a definition of implied malice:

"The defendant acted with implied malice if:

"Number one, he intentionally committed an act;

"Number two, the natural and probable consequences of the act were dangerous to human life;

"Number three, at the time he acted, he knew his act was dangerous to human life;

8.

"And number four, he deliberately acted with conscious disregard for human life."

The court instructed the jury on attempted murder in accordance with CALCRIM No. 600. The instruction explained that, to be guilty of attempted murder, a defendant must take a direct but ineffective step toward killing a person and must intend to kill that person.

Counsel for Collins asked the trial court for a special instruction on aiding and abetting first degree murder and attempted murder. Asberry's counsel joined in the request. The requested instruction stated:

"An aider and abettor must share the requisite specific intent of the perpetrator.

"The intent required to aid and abet the crimes alleged in Count 1 and Count 2, 1st degree murder and attempted murder, respectively, is the same intent required of the perpetrator, i.e., willfully, deliberately, and with premeditation.

"The aider and abettor must have shared the perpetrator's specific intent to kill.

"The specific intent to kill is a necessary element of both Counts 1 and 2. The specific intent required is included in the definition of 1st degree murder (CALCRIM 521) and attempted murder (CALCRIM 600, 601)."

The trial court refused the special instruction.

Asberry now argues that the court should have instructed the jury that, to find him guilty of murder or attempted murder as an aider and abettor, it had to find that he intended to kill. As an alternative, Asberry argues that the instructions should have told the jury that it could not find him guilty of murder as an aider and abettor unless the direct perpetrator intended to kill, or, in other words, that Asberry could not be found to have aided and abetted a murder that was based on the direct perpetrator's implied malice.

9.

As a preliminary matter, the refused instruction was about the state of mind for aiding and abetting first degree murder and attempted murder. Asberry concedes the instruction was "admittedly far from perfect … [and] not correct …." Since the jury did not find first degree murder, any error in refusing this instruction was harmless with respect to count 1. On count 2, the requested instruction was erroneous, since attempted murder does not require a finding that the perpetrator acted willfully, deliberately, and with premeditation. The instructions given correctly stated that an attempted murderer must intend to kill.

Thus, there was no error in refusing the instruction Asberry requested. For attempted murder, the instructions given were correct and the requested instruction was not. On the mental state required for aiding and abetting implied malice murder—the main topic of Asberry's appeal—no special instruction was requested.

We will assume for the sake of argument, however, that the omission of an instruction of the kind now argued for on the latter topic (implied malice murder) would, if erroneous, have affected Asberry's substantial rights within the meaning of section 1259. If an intent to kill were a necessary element of aiding and abetting second degree murder, a jury so instructed might (we will assume) reasonably have found Asberry not guilty of second degree murder. Therefore we will proceed to address the merits of Asberry's argument on the murder instructions.

Asberry's central contention is that an aider and abettor of second degree implied malice murder must harbor an intent to kill. This is the key to both versions of his argument. He says the jury should have been instructed either that Asberry must have had an intent to kill or else that the shooter must have had an intent to kill and Asberry must have shared in the shooter's intent.

There is, however, no authority for the proposition that an aider and abettor of second degree implied malice murder must intend to kill. The law is settled, of course, that a direct perpetrator can be guilty of murder based on implied malice. It is also settled

10.

that an aider and abettor is guilty as a principal if he or she knew the direct perpetrator intended to commit the crime; the aider and abettor intended to aid in its commission; and the aider and abettor did aid in its commission. Asberry has cited no case holding that these principles do not apply to implied malice murder.

As Asberry points out, there is no such thing as *attempted* murder based on implied malice. An intent to kill is required for that offense. (*People v. Collie* (1981) 30 Cal.3d 43, 62; *People v. Mize* (1889) 80 Cal. 41, 43.) There is no authority for the idea that aiding and abetting murder is the same as attempting murder in this respect, however.

There also is no basis in logic for this idea, contrary to Asberry's contentions. There is no such thing as implied malice attempted murder because it does not make sense to speak of having conscious *disregard* for an outcome (death) when, at the same time, one is *attempting* to achieve it. By contrast, it does make sense to speak of intentionally aiding a perpetrator in doing an act when both the perpetrator and the aider know the act naturally and probably will cause death and both consciously disregard this probable result. When Asberry passed the gun to Gary, he could have done so while doing all the following: knowing Gary intended to fire at the victim, intending to assist in that act, knowing the act would naturally and probably kill the victim, knowing Gary would fire with conscious disregard for the victim's life, and sharing in that conscious disregard. There is no logistical problem here.

Asberry cites *People v. Mendoza* (1998) 18 Cal.4th 1114, 1129, in which the court stated that an aider and abettor of a crime must specifically intend not only his own act of aiding but also the criminal act the direct perpetrator commits. The court observed, as an example, that a defendant who handed a bat to a perpetrator would not be guilty as an aider and abettor of a crime the perpetrator subsequently committed with the bat if the defendant's only intent was to hand the other person a bat. (*Ibid.*) These statements are consistent with what we have said and with the trial court's instructions. Under the

11.

instructions, the jury could not have found Asberry guilty of murder if it believed his intent was merely to hand Gary a gun.

Asberry also argues that CALCRIM No. 401 "is not clear as to the intent to kill element for direct aiding and abetting of murder and attempted murder." This argument fails with respect to aiding and abetting murder because, as we have explained, there is no requirement that an aider and abettor of second degree murder intended to kill. For attempted murder, an aider and abettor and a direct perpetrator both must intend to kill, but the instructions given were adequate on this point. They stated that a direct perpetrator of attempted murder must intend to kill, and that an aider and abettor must know of the direct perpetrator's intent and must intend to aid him in committing the crime.

For all these reasons, we conclude that instructional error has not been shown.

We have noted that the abstract of judgment describes the conviction on count 1 as "MURDER: FIRST DEGREE (LIO)." The conviction on count 1 was of second degree murder. The abstract must be corrected.

### DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment to show that the conviction on count 1 was of second degree murder, not first degree murder, and to forward the corrected abstract to the appropriate correctional authorities.

_____
Smith, J.

WE CONCUR:


_____
Hill, P.J.



_____
Kane, J.

12.